I'll start where I finished, which was, if we reject your arguments in the previous case and conclude there's no Seventh Amendment right to a jury trial on the issues you wanted, and we affirm the district court's award of fees there, what different arguments do you have in this case? Sure. The only real difference is the standard that would be applied to the application of collateral estoppel, which says a full and fair opportunity for the issues to be heard, which is not the Seventh Amendment, but it would allow the court to find on a different basis as to the California case, which is, even if you don't agree with me that we have a Seventh Amendment to have the jury decide our knowledge and intent in bringing suit an issue that was never before the trier of fact and that cannot be decided by the court on the basis of things that it saw conduct during the litigation, then you could still find that we did not have a full and fair opportunity to litigate the issue because of the way that it was presented, even if it didn't violate the Seventh Amendment. And that's because, why? Because it seems to me from our discussion from the last round that you were allowed to present declarations and any kind of arguments and factual evidence you wanted to in the 285 proceeding. And that goes to Judge Newman's point, which is, or the question that she asked, I'm sorry, which is that during the 285 proceedings in the Avid case, the issue of our subjective bad faith in filing the action in the first instance was never squarely before the court. The court made a finding on that issue. What the parties really litigated was, you know, other aspects of 285, which the court did not find warranted exceptional case sanctions. There was never a Rule 11 proceeding here. There was never... Wait. So when they moved for fees, they didn't suggest that you filed the case in bad faith? I don't think so. It was about whether, you know, whether we, you know, this conspiracy involving... There's no discussion of bad faith in any of the briefing or the hearing or the like? Well, it was about this conspiracy. It's about this story, this sordid tale involving Dr. Hardy and Dr. Mullen, where Mr. Sexton, my client, AIA, plays a small role and at every step of the way is advised by counsel. He basically paid to prosecute the patent and to provide advice. You're not answering my question. I mean, if your argument was they asked for fees on one basis, all the briefing, all the evidence, and the district court, sua sponte, came up with a second basis in its opinion for finding fees, then you might have an argument as to the collateral estoppel. But I don't hear you saying that, and that wasn't my sense of the record. It seems perfectly clear that everybody knew what was being decided here, and you had the opportunity to present argument and the evidence and discuss it at the hearing. You didn't seem to make any, you know, objections to, you know, acts being for supplemental briefing or anything, although I might have missed that. I'm at a little of a disadvantage, Your Honor, because I did not handle the underlying 285 proceeding, but it's my understanding of the record that the issue of our substantive bad faith in filing suit was not the issue that was litigated. It was more this issue of you were involved in a conspiracy with Dr. Hardy and Dr. Mullen to deprive Imperial College of its interest and to deprive USF of its interest. And that's what was litigated. That's why the evidence about, you know, what USF said about waiver. But why wasn't filing a patent suit, I mean, based upon that conspiracy, bad faith? Well, and this is important. The conspiracy involved three individuals, okay? The jury never made any findings about conspiracy. You're back to the jury things. I think that's what we talked about in the last case. I'm trying to determine what's different about this case in the collateral estoppel, and you seem to suggest that even if we affirm there, there was some kind of process there that you weren't given that should have afforded you more process here. And I don't understand what it is. Well, they just basically resubmitted the briefs in the California case, okay? But that's the point of collateral estoppel. If you had a full and fair opportunity to litigate it in the other case, then that's perfectly fine. I'm just trying to find where in the 285 proceedings before the other court that you were denied some opportunity that you either asked for or made an objection to or that was an undue surprise that shouldn't afford collateral estoppel here. I'm not arguing that we didn't have a full and fair opportunity to argue the issues in the California case. I'm arguing that the California court mistakenly decided that we had a full and fair opportunity. Well, that's what I just asked you. Where in the record of the other case did you make an objection, asked for the opportunity to submit different evidence, say this argument wasn't raised or anything like that, either in the briefing or the oral hearing or the like that would show that you thought you were deprived of the full opportunity there? AIA repeatedly objected to the fact that the court made findings that went beyond the scope of the jury's trial. That's not the same issue. If you lose on that, that's what I'm trying to get at, if your argument hinges on the Seventh Amendment issue or not. Well, it's not just the Seventh Amendment. I mean, it's also the fact that the opportunity to litigate the issue was clouded by the fact that there was findings of conspiracy, and we were lumped in with these other bad actors, but the court never parsed that out, and the jury never made those findings. The jury's findings were very simple. The jury made findings about that we were, there was a co-inventor, it was John Hardy, and that USF did not make an informed waiver. And that was the issue that was being argued to the jury, has nothing to do with whether we brought suit in bad faith. And then in the context of the 285 proceeding, the discussion is about, I mean, they repeatedly talk about a sordid tale, and it's about that conspiracy. But that conspiracy is not the basis for a finding that Sexton, AIA knew, that it had no valid patent when it filed suit, because we were different than the other members of the conspiracy that was never found by a fact finder. We were not a scientist. We did not participate in all that. We were not a lawyer. We were advised by counsel. And so navigating this complex world of nucleic acids and informed waivers, this businessman relied on those issues and filed suit, and he found a lawyer willing to take a case on a contingency, and not just any lawyer, Brian Cave. You know, and I think that speaks to the fact that we got kind of swept up in this current that involved all these other people, and importantly, because we were deprived of our Seventh Amendment rights, and because the process that was followed in the district court never really squarely put the question of, did you know, AIA, not everybody else, but AIA, when you filed suit, that your patents were invalid, notwithstanding the fact that the inventors were telling you that they, that they, one was the inventor and the other was not, and notwithstanding the fact that the lawyers said that USF waived, you know, And that, and that's what, that's what went wrong here. Thank you. Ms. Fishman. Good morning, Your Honors. May it please the Court. I'd like to begin by responding to the argument just made by Mr. Buckley, suggesting that it was a surprise to AIA in the underlying Eastern District of Pennsylvania case that the issue of its bad faith might come up in an exceptional case proceeding. Just based on a review of the record, it's clear from the avid appeal that the issue of subjective bad faith in filing was squarely before the Court and the parties in the exceptional case proceeding. Was a distinction drawn between the inventors or non-inventors or whatever and this businessman who took on the larger expenses of enforcing the patent? Well, fairly, Your Honor, the evidence at trial, and Juan was not a party to the trial below, but we're very familiar with the record. The evidence at trial was that Mr. Sexton, who's the principal of AIA, architected the scheme to defraud Athena Neurosciences as well as USF and Imperial College of their patent rights. So he wasn't some innocent bystander. He was the one who hatched the plan, was the evidence at trial, and involved both Drs. Hardy and Dr. Mullen in this conspiracy. Dr. Hardy, some 20 years later, turned whistleblower, but Dr. Mullen, who, again, Mr. Buckley characterized as some scientist not involved in AIA, that's a misrepresentation. For years, Mullen was, in fact, the chief scientific officer of AIA, and he worked together with Mr. Sexton, not just in forming AIA, but in carrying out its activities and bringing suit. So Mr. Sexton is about as far, and AIA is about as far as you could find from someone who was, you know, led down the path. In fact, he was the one leading others down this path of conspiracy in order to defraud a university and a biotech company from the rights they'd invested in. But turning now to the issue of, not only was the issue of bad faith squarely addressed, but in the avid appeal, AIA argued that there was no bad faith in bringing suit. That's at Appendix 3853. And in the appendix in our joint case before the Northern District Court, we responded at Appendix 1186. So the issue of AIA's subjective bad faith was squarely part of the exceptional case proceeding, and as Mr. Buckley conceded during questioning, AIA had every opportunity to ignore the Pennsylvania court. So turning now to the issue of whether or not the Northern District Court collateral estoppel ruling should be affirmed, the issue is, did the Northern District of California Court err or abuse her discretion in applying collateral estoppel? And clearly the answer to that question is no. It is undisputed that the first three requirements for collateral estoppel are met in this case. And AIA's sole argument is that it was deprived of a full and fair opportunity to litigate. Why? It says there were two reasons. First, AIA argues that it didn't have a full and fair opportunity to litigate because it didn't have a jury trial on the issue of exceptional case. And second, it argues that it was deprived of the ability to put certain evidence on during the exceptional case proceedings. So I will address each of these in turn. But before I do, I'd just like to focus the court on the law that I'm sure it's very well aware of, of what it means to have a full and fair opportunity to litigate in the context of our collateral estoppel case law. As the Supreme Court has instructed in Blondertongue, in addition to issues like choice of forum and incentive to litigate, other issues in the patent context can arise, such as was the technical subject matter so beyond the judge? Did the judge apply the wrong legal framework? Or was the patentee without fault of his own deprived of crucial evidence or witnesses in the first litigation? And this court has held similarly. It is not, as this court noted in Banner v. U.S., that a mere disagreement with a legal ruling provides a basis to find that there was no full and fair opportunity to litigate. In this case, AIA chose the forum. It chose Eastern District of Pennsylvania, had every incentive to litigate there. Exceptional case is not a technical issue. And AIA does not argue that the AVID court misapprehended the relevant legal framework. Instead, their argument is that somehow they were deprived of crucial evidence in the first litigation. And again, it's important to keep in mind that Blondertongue says they must have been deprived of crucial evidence through no fault of AIA's own. And those simply are not the facts here. So let's look at AIA's arguments one at a time. First, AIA argues that it had no jury findings on exceptional case. As this court has already recognized, there's no Seventh Amendment right to jury findings on exceptional case. And in fact, there's no precedent for jury findings on a fee recovery or fee statute that we're aware of. But even in the case where there is a jury right on an underlying issue of law, in the Supreme Court's Parkland-Hosiery case, the absence of a jury trial did not deprive the plaintiff of its full and fair opportunity to litigate. The court specifically found that the absence of a jury trial was neutral to the issue of full and fair opportunity to litigate. And then again, this court, in a patent case, quite relevantly, the issue very similar to the issue that's now being presented by AIA, a party pressed the issue that where summary judgment had been granted on obviousness below, and that was later applied collaterally for issue preclusion in a subsequent ruling, the appellant argued that it had been deprived of its Seventh Amendment right and that there was no full and fair opportunity to litigate because the underlying obviousness determination, which is an issue that can go to the jury, had been determined on summary judgment. And this court disagreed. This court said, we believe the rationale of Blondertong extends to all prior determinations of invalidity. Its application is not dependent on how the judgment of invalidity was reached. That was in Stevenson versus Sears-Roebuck, a 1983 decision out of this court. AIA offers no legal support for its argument that the absence of a jury trial is tantamount to no full and fair opportunity to litigate, and the law of this court and the Supreme Court hold precisely the opposite. So then second, what is AIA's argument? AIA argues that evidence was improperly excluded from the jury trial. And as Judge Hughes has commented, this is a sleight of hand because the relevant issue is not whether or not AIA was able to put this evidence on in the jury trial. The issue is, what was before the court and exceptional case determination? And there was, and so the issue is, was AIA improperly deprived of crucial evidence in the exceptional case proceedings through no fault of its own? The answer there is a resounding no, it was not. Not only was the four pieces of evidence that AIA identifies in its briefing, three of which were affirmatively moved by AIA either into evidence or argued at the hearing on exceptional case. And then the fourth piece of evidence they never sought to raise in the exceptional case proceeding. This is not a case where the Eastern District of Pennsylvania excluded evidence, where AIA submitted a brief or a declaration or an affidavit from the witness and the court excluded it, precluded the argument. The court received the evidence that they submitted. He just didn't find the evidence persuasive. What was the subject of this evidence? What was the subject? Certainly. So there were four pieces of evidence. The first was a Nature article. It's Appendix 737. It was a Nature article from June of 2000. And the Nature article is reporting on the discovery of a new mutation. And it's saying who discovered it and that they had just joined USF. So in other words, that's one of the pieces of the evidence. The other piece of evidence, it's Appendix 727 and Appendix 729, are letters from USF's Department of Psychiatry Chair, Dr. Anthony Redding, getting at whether or not USF has rights in the invention. And the fourth piece of evidence that they complained about but never sought to admit was a Science News publication. All of these pieces of evidence had been used by AIA to argue that they did not knowingly fraud USF of rights to the Swedish mutation patent, the subsequent patent. So these were pieces of evidence that AIA put in to show that it had not acted in bad faith. Likewise, in the underlying proceeding, AIA submitted evidence that it had consulted with CTO. Likewise, there was evidence that there had been some discussion of other rights with Swedish inventors. All sorts of evidence was put into the record in the exceptional case proceeding before Judge Savage that AIA contended showed that AIA had acted in good faith. Judge Savage just didn't believe it because it wasn't credible or the evidence didn't support the inferences that AIA sought to draw from them. They provided... That's what judges do, isn't it? Correct. They decide who they believe. That's exactly right. And the judge made the point both in his order and it's never been challenged. He was present for the eight days of witness testimony. He was able to gauge the credibility of the witnesses. He was receiving letters. The letters that AIA was relying on were based on Dr. Redding who had no present memory of having ever been informed. And so it wasn't very credible to take a statement that he made when he may have been kept in the dark and use that as something saying that USF made a knowing waiver. But if the judge thought that some sort of fraud was being committed or so concluded, isn't there a high burden of establishing fraudulent intent? Isn't there a high burden of establishing fraudulent intent? I don't know. I don't... I apologize, Your Honor. I'm not counsel for Abbott. I don't know that the judge ever made below a finding of fraudulent intent, although I think there was a basis for it in the evidence of record. What the judge found is that AIA acted in bad faith, whether or not... And the judge was entitled to do that. And the judge was entitled to do that based on both the credibility of the witnesses and the evidence that was submitted in the exceptional case proceeding. But bad faith is quite a loose concept. I would have thought that there would have been some rigorous standards for establishing bad faith. Well, I imagine there are. I think in this case, the evidence more than satisfied what was required to be shown in bad faith. And I'd note that AIA doesn't challenge the actual findings made by the court. AIA doesn't come in to the underlying merits proceeding and say, the judge got it wrong. He completely overlooked this evidence or applied the wrong standard. That's not something AIA has raised because there's not a basis to raise it. The evidence was overwhelming evidence. It wasn't just of Dr. Hardy, who is now the whistleblower, but it was two third-party witnesses, actually three third-party witnesses, who are disinterested parties, respected academics in their own right, who came forward and corroborated the fact that there had been a conspiracy architected by Mr. Sexton, the principal of AIA, along with Drs. Mullen and Hardy. And that, in fact, there was fraud. That there was fraud in depriving Imperial College of its rights. There was fraud in depriving USF of its rights. And there was ample record evidence, if the jury had been asked to find it. And then, again, but the jury wasn't asked to find it. And then in the proceedings before the judge, AIA was able to put in all of the evidence it wanted to, to say why there was some other explanation, why perhaps it didn't act in bad faith. And they put in all the evidence they wanted to put in, and the judge, just based on his weighing of the evidence, made the finding that they did not act in good faith, that AIA knew when it brought suit, that it did not have proper title, and that it had taken steps to deprive other interested parties of their rights. Well, there was no finding here, right? It was just entirely a matter of collateral estoppel. Correct. So that is absolutely correct. So Judge Laporte, in the Northern District of California, is just applying collateral estoppel and is not making independent findings. So the relevant inquiry for whether or not there was a full and fair opportunity to litigate is did AIA have the opportunity before Judge Savage in the Eastern District of Pennsylvania to put forward any evidence, or was it somehow deprived of crucial evidence through no fault of its own? And the answer here is they were not deprived of any evidence, and any evidence that wasn't put in that they wanted to be put in was not put in at their own election. And for that reason, they had a full and fair opportunity to litigate, and the District Court in Northern District should be affirmed in our collateral estoppel ruling. Did I answer the question, Your Honor? Well, I suppose it answers the question. It is, here, apparently, it was just, let's see what the other side does, and that's enough for me. And one must wonder how full and fair that was in a different court. Okay. If there are no further questions, Your Honor, I'll sit down. All right. Thank you, Ms. Fishman. Thank you. Mr. Buckley? I feel like I've been up here all day. Thank you for your indulgence. I just want to point out something that was discussed. The jury was never asked to make any findings about AIA's intent or state of mind. I think we're pretty aware of that. You've been arguing that for the last 20 minutes. I mean, we're on a collateral estoppel issue, so what do you have to say in response to your friend's notion that you were given a full opportunity to present any evidence or argument you wanted to in the Pennsylvania court, and that any failure to present more evidence was your choice? Is there any specific thing you think you could have presented in the Pennsylvania court that you weren't allowed to? It's not a question of allowed. I think it's a question of how the issue was framed. After a long trial that focused on this conspiracy and this issue with USF's waiver and the issue of inventorship, they found themselves in the exceptional case proceedings before Judge Savage, where those issues, again, remain the focus. USF conspiracy and PTO. The focus never really shifted to whether AIA had an intent to bring suit in bad faith. And frankly, the fact that AIA had the same counsel advising it about the issues of exceptional case that it did when it brought suit makes it difficult for them to look back and say, let's put our own conduct before the court. That's relevant. Now, AIA's discussions with these lawyers at Bryan Cave, AIA's, you know, their analysis of the issues, that was never before the district court. But you never tried to put that before the district court? Well, the lawyers that represented AIA that also filed the action did not try to put that evidence. But it was in part because the way the issues were being framed by the court and by opposing counsel. It seems to me that if you were aware that the whole focus of the standing inquiry was an allegation that a conspiracy occurred to basically defraud somebody of their patent rights, that your good faith effort in relying on that patent would have been at issue in a 285 proceeding. Well, it certainly was. And they argued, you know, we proceeded in good faith. Dr. Mullen, who told us that he was the inventor, you know, that was the basis. He signed the affidavit before the PTO. Dr. Hardy, who, as they said, later turned whistleblower, he said, for years, I'm not the inventor. And Sexton goes to the lawyers and says, there's these two guys and they have this nucleic acid invention. Tell me what I should do. And they say, Hardy's the inventor. Excuse me, Mullen's the inventor. Hardy is not. You have a basis. So on the basis of their advice, they apply to the PTO. Then they have this issue with USF. And, again, he's saying, how do we navigate this circumstance? He goes to lawyers and they say. This seems to be a factual description that was the one propounded by your client in the standing trial but was not the one that was accepted. Well, and that's important, Your Honor, because this was not what, this was the part that was excluded from the standing trial because Judge Savage said, AIA's intent and state of mind is not relevant to determining whether Hardy was actually a co-inventor and whether USF actually had an informed waiver. It was USF's state of mind and the facts underlying the inventorship that was at issue in that trial. So Savage said, That doesn't come in. And then after he. And so on the 285 proceedings, did you make a request to put that information in? Well, certainly they, in the briefing, they pointed to some of these things, but they were not permitted discovery. They were not permitted to call witnesses. It was a very streamlined proceeding. Did you ask for discovery? Did you ask to call witnesses? No. Why are you pointing that out? I mean, it's irrelevant. Well, because we didn't realize that it would be relevant until the judge made a finding about our knowledge and intent which were never before him in bringing suit. Let me ask my question. You can't talk over me. I'm sorry. You didn't realize in a 285 proceeding that the good faith in filing the case would be that issue? Of course you did. I mean, that's the whole point of a 285 proceeding. No, the 285 proceeding in the district court was focused on the allegation that AIA conspired to defraud the PTO and conspired to defraud USF, not AIA's state of mind when it filed suit. But it's based upon the same thing. I mean, they didn't come up with an independent bad faith intent to file the suit like vexatious litigation or the like. It was bad faith because you relied on a patent that was acquired through a conspiracy. Advised by counsel all the way. And I think the point is that Judge Savage, if you look at his opinion, and it focuses on what AIA knew when it brought the action, which was never an issue that was tried to the jury and never an issue that was really discussed in the exceptional case proceeding. There was a trial about something else. And then this issue forms the basis of $15 million in sanctions against AIA. You know, it was advised by counsel the entire time. The other thing I wanted to point out is that, and again, this is sort of where I think we're missing each other. We're not arguing that there's a jury trial right for exceptional case in a broad sense. We're arguing that there is a jury trial right for findings about knowledge and intent. And when those issues are never presented to the jury, when those issues are not part of the bifurcated trial, then there's a momentum in a way that it's unfair and a violation of our Seventh Amendment right to bring them back and use that as the basis for the exceptional case finding against AIA. If it was something else, if it was somebody did something in the litigation, I mean, by all accounts, this was professionally litigated. You know, I was sort of on the sidelines during this litigation. I'll tell you that nobody had any idea. These issues were totally blindsided, the lawyers of Brian Cave. These are very good lawyers on the other side. And, again, this is punishing AIA for losing and creating a situation where, process wise, the court can reach outside the bounds of the entire proceedings that were before it and make findings about issues that require a jury and require a jury of peers to decide whether this businessman was okay to rely on these lawyers to tell them about the complex areas of the law and scientists about complex science, nucleic acids. I mean, this is not stuff that ordinary people know. They go to lawyers and they ask for help. And these lawyers told them, you've got a USF waived, you know, the PTO, Mullins the inventor, and you can file suit. And each question had evidence on both sides. Each question had evidence on both sides. And to punish AIA with such a significant sanction following this process, I think, is unfair and a violation of the Seventh Amendment. Thank you. Thank you for your time and patience. Thank you. Thank you both. The case is taken under submission.